May it please the Court, my name is Micah Doktoroff, and I'm a student in the Ninth Circuit Appellate Advocacy Clinic at UCLA School of Law. I represent Mr. Blaisdell as pro bono counsel under the supervision of Don Sestito of O'Melveny & Myers. I will be addressing Mr. Blaisdell's service of process retaliation claim, which was dismissed at screening, and Ms. Sestito will be addressing Mr. Blaisdell's prior litigation retaliation claim, which was disposed of at summary judgment. Alright, counsel, you have 15 minutes for your entire side. How do you propose to allocate the time? I will take 6 minutes now, and then I will turn the argument over to my colleague, Ms. Sestito, and I'd like to reserve 3 minutes for rebuttal, please. Well, you're going to have to be sure that you comply with your plans. Very often, such allocations never materialize because our questions will take you off target. But go ahead, and I'll try to help you, but it's still your duty. Go ahead. We'll do our best. When analyzing prisoners' First Amendment claims, when analyzing any plaintiff's First Amendment claims, courts must first determine whether the First Amendment is implicated. In the prison context, if the answer to that first question is yes, the First Amendment is implicated as a general matter, courts then apply the Turner test to determine whether the prison's restrictions on that protected activity were reasonably related to a legitimate theological argument. Well, what is the authority for the proposition that an inmate trying to serve process on a manager of the prison is protected contact or conduct? The Ninth Circuit in Rizzo found that prisoners' legal assistance, when it's taken for the purpose of assisting another in the vindication of his rights through the courts, is protected by the First Amendment. The Ninth Circuit relied on the reasoning of the Tenth Circuit's opinion in Owens, which found that the plaintiff's activity of driving and accompanying his wife to her attorney's office, where her attorney then prepared her legal action, was protected by the First Amendment. And both of these cases are derived from the Supreme Court's holding in Button, which found that the plaintiff's activity was protected by the First Amendment. If not flatly overturning it. The Court in Shaw, Your Honor, was addressing a separate matter. The Court was addressing the second question of the application of Turner. In the – in Shaw, the Court was addressing the narrow issue of whether the provision of legal service deserves heightened First Amendment protection above and beyond that which is – which the Court had found applicable under Turner. Well, but just a minute. If I really look at Shaw, it's – the Court says, the traditionally Federal courts do not intervene in internal affairs of the prisons and instead adopts a broad, hands-off attitude toward the problems of a prison administration. Second, it said, under Turner, there was no heightened constitutional protection whenever a prisoner's communication includes legal advice. And we don't disagree with that, Your Honor. In this case, and what's before the Court today, is whether the First Amendment was even implicated by Mr. Blaisdell's service. In Turner and in Shaw – in Shaw, the Court was addressing the issue of whether once the conduct has been – once the conduct does implicate the First Amendment, whether the prison can reasonably restrict that First Amendment activity. If this Court remands and allows Mr. Blaisdell to proceed with his claim, he will still have to prove that there was an absence of a penological purpose under Turner. All that he's asking today is for the Court to recognize that his activity did implicate the First Amendment and that, therefore, the Court was wrong to have dismissed his claim at screening. He should have been allowed to proceed and prove that, along with all of the other elements of his claim. And the Court, by holding as a matter of law that service of process cannot implicate the First Amendment, was incorrect. And we don't think that it was consistent with the law of this circuit in Rizzo and of the law of the Supreme Court. Well, I guess I'm having a tough time with Rizzo, because it seems to me that there clearly has a First Amendment right to sue and pursue their own grievances, but it seems to me that Shaw says to me that the Supreme Court is very reluctant to expand the additional constitutional values in the area of prisoner assistance. So since it hasn't been declared, then I'm not sure it would reach simple service of process. And what you're asking me is to declare it. I don't think that Shaw addresses the same issue that we're coming to the Court today with. Shaw addresses the issue of the application of Turner and whether, once the First Amendment is implicated in the prisoner's underlying conduct, whether the prison can then reasonably restrict that conduct.  And I think that the question of whether we survive a facial challenge under Turner does not address the question of whether the underlying conduct implicates the First Amendment. And we would not be able to do that if we didn't have the First Amendment. Well, the problem that I have with your argument is that when we're talking about the prison and we're talking about what the prison is allowed to do, I'm having a tough time suggesting that we're going to allow inmate law clerks to, if you will, undermine the prison rules and undermine the prison regulations simply to serve process. It seems a stretch, even with the best cases you've got. Your Honor, we're not asking the Court to find that. We're asking the Court to recognize that Mr. Blaisdell's service of process could be protected by the First Amendment, and that, therefore, the district court was wrong to decide that it could not serve as a valid basis for his retaliation claim. He will still have to prove under Turner that the prison could not reasonably restrict that. But at the pleading stage, the district court was wrong not to allow him to even proceed with his claim. Counsel, there's less than eight minutes left for your entire side. I will turn the argument over to my colleague. Thank you, Your Honor. May it please the Court, my name is Dawn Sestito. I'll be addressing Mr. Blaisdell's retaliation claim premised on the prior litigation against the prison. Tell me why I should even listen to this argument. Your client said to the district court, and I quote, Your Honor, Mr. Blaisdell was pro se below, and the Court is required to construe  with the Federal summons and complaint. The issue in this case is not whether Frappea, I'm not sure that's the way you say it, wrote a false D.R. because of plaintiff's multiple lawsuits. It is because plaintiff legally served Frappea with a Federal summons and complaint. It seems to me your client said what you're now arguing is not my case at all. Your Honor, Mr. Blaisdell was pro se below, and the Court is required to construe pro se pleadings liberally. I can construe that just as liberally as I want, and I can't get to where you are. He says my claim is not whether there's a false D.R. because of plaintiff's multiple lawsuits. It is because the plaintiff legally served Frappea with a Federal summons and complaint. Now, if he had said anything that was in the nebulous, in the even not knowing exactly where he was, I can get to where you're going. But he said it is not. In that same pleading, Your Honor, at Excerpt of Record 35, he also mentioned that the reason for the disciplinary report was to retaliate because of the service and that the other suits that he made against the prison made the retaliation easier. Well, but it wouldn't have mattered what else he said, wherever else he said it. He wrote right up front, don't look at this, look at this. If it isn't this, I don't have a claim. He was, Your Honor, proceeding pro se, and this Court's en banc decision in Brett's, this Court said that you have to construe pro se pleadings liberally, and in that case up to the court. So what you're really asking me to do then, Counselor, is if he says anything in court and he contradicts it in any way, even in a place where I say it's not this, if he says anything else, I'm to look past all that and let lawyers do whatever they want to do with all the rest that he says. Is that your argument? That's not our argument. But in the Brett's case, the Court upheld and found a section 1985 claim, even though no such claim had been pled by the pro se plaintiff in that case. The plaintiff had pled a section 1983 claim, and the Court said that construing the pleadings liberally, because the face of the pleadings demonstrated a violation of section 1985, that they were compelled to uphold that claim. No place in Brett's, no place, did he say, I don't have a 1985 claim. I've got this claim. I think it's a 1983 claim, and I'm raising it. Well, Mr. Blaisdell in this case consistently said that both reasons were why he was retaliating against him. That isn't consistent with this at all. He was – that particular statement, of course, did not advance his case properly. But he was – he was still seeking, perhaps improperly, the Court to reconsider the decision on the service of process issue. But he did, in his opposition to the summary judgment, oppose in the separate statement of facts every fact that the – that Ms. Frappia put forth in favor of her summary judgment claim. I guess maybe I'm a little annoyed by this, because if I'm a district court judge and I just happen to have been a former one, and somebody stands up in front of me and says, this is my complaint, got a lot of things down there, Judge, but this is it, focus, and then I have some good attorney like you come up and say, well, I appreciate that the district court had that comment in front of it, and I appreciate what the district court did, but bottom line, the district court should have reached out and looked for every other fact under the sun to help my client, and please, Judge Smith, overturn the district court, because they didn't. Your Honor, our position is that it was clear looking at the opposition to the separate statement that Mr. Blaisdell had stated, had raised a triable issue on the retaliation based on the prior litigation. And so while he made that statement in the brief focusing on the service of process, that the facts that he put forth created a triable issue on the prior litigation, that was clearly stated in his complaint, and the fact that he was – that he confused the issues before the judge as a pro se litigant should not be held against him under these circumstances. Counsel, you are down to three minutes. You had indicated you wanted to reserve. We would like to reserve. You may do so. We'll hear from the other side. We'll hear from the other side. Good morning. I'm Nick Aceto, arguing today on behalf of the appellees. The appellant is asking this Court to find constitutional rights specifically for inmates that has never been recognized in any court before, a First Amendment right to serve process on behalf of another inmate. He contends that this right flows from a broader right to provide legal assistance, but the origins of that claimed right do not support an extension of protection to service of process. All of the cases they rely on, from Button to Rizzo, had two things in common. The plaintiff was assisting an actual litigation, and the litigation involved a vindication of civil rights. It was those two circumstances that garnered protection under the First Amendment in each of those cases. For example, in Button, the plaintiffs represented individuals in lawsuits seeking equality of treatment for African-Americans. The plaintiffs' lawyers, the plaintiffs actually litigated those lawsuits, and the Court held that their representation constituted a form of political expression because they advocated against government intrusion. Thus, the association for litigation was a mode of expression that was protected. Subsequently, the U.S. Supreme Court in Primus, that involved, the plaintiff was a lawyer for the ACLU, it essentially adopted an extended Button to the facts of that case. She was representing individuals alleging violations of their civil liberties. In Owens, Owens looked back to Button. In that case, the plaintiff accompanied his wife to her attorney's office and also assisted her with filing her Title VII discrimination case. It wasn't solely just driving to the off – driving her to her attorney's office. If you look at the opinion closely, the Court does note that he assisted in some way. With the filing. But important or significantly, the Court held that the conduct was protected in that case because he was assisting litigation, vindicating civil rights. Also the – You understand that I am bound by that which has preceded me from this bench, even when I don't like it. Do a good job, if you can, to distinguish this case from Rizzo. Sure. In Rizzo, the plaintiff was an inmate and self-proclaimed jailhouse lawyer. And he was assisting other inmates with their habeas petitions and other Federal actions. In Rizzo, the Court relied on Button and Owens, which I just discussed, and held that the inmate's assistance was protected. Now, again, two characteristics in that case which are not present here. He was assisting with litigation and it involved civil rights, civil rights matters. In this case, on the second characteristic, Govea's lawsuit was not a civil rights lawsuit. Blaisdell, during his deposition, test the – So you're suggesting that this can come down to what kind of a lawsuit it is, that service of process would be used? If we're looking squarely at Rizzo and nothing that preceded it, or – and, I'm And that's not taking into consideration Shaw and the impact that it had on Rizzo's holding. But if you look squarely at Rizzo and this case, this case was – Govea's lawsuit was a Federal RICO case. That's not vindicating civil rights. Specifically, the allegation against Verpia in Govea's lawsuit was that she refused to notarize a contract for him. I guess I'm having a tough time with the rationale for saying service of process is something I ought to protect when it has a civil rights suit involved with it, rather than a debtor's suit. What rationale do I use? Well, what the appellant is saying – I mean, I don't see a good rationale for saying service of process is something I should protect one time, but not another, just based on the issue in the case. Well, they're trying to extend a claimed right of association by a litigation. They're trying to extend that to include service of process. So I'm – I'm simply arguing that if we look at the facts here, which involved the pro se inmate, and he was serving process on behalf of another inmate, and maybe I'm just – I'm directing a holding that's more narrow than it even needs to be, but at least in – Is there another – is there another distinguishing characteristic you'd argue? Other than the fact that it was a Federal RICO suit? Yes. Yes, Your Honor. In Rizzo and its predecessors, they were all actively litigating the cases. Here, it was a mere act of handing a piece of paper to another individual. There's nothing expressive about that single act. And this whole notion of association by litigation, this right of association, stems from active litigation, not merely legal assistance, whatever that means, but active litigation. And if you look at NAACP and in Rizzo, Rizzo, the inmate, was a jailhouse lawyer. Blisdale here, he's – he stated in his response to the motion for summary judgment, I was not providing legal assistance to Govea because the suit had been in a Mississippi Federal Court and plaintiff had nothing to do with the drafting or filing of Govea's lawsuit. And that's at ER 53. During his deposition, he testified that when Govea asked him to do this, he said, quote, he didn't – he did not want to make a special trip to do it. He would get around to it in several days the next time he had the opportunity. So even he was distancing himself from any sort of assistance. This was merely him walking up to a staff member and handing that person a piece of paper. Kennedy, could you help me out with a process question? Now, this is a – the State of Arizona doesn't have any role in this kind of a renta – it's a renta jail, isn't it? It's a proprietary jail that offers space to Hawaii and Alaska and anybody else that So what is the process by which a prisoner can serve the management if he wants to bring a civil rights case against the proprietors of this renta jail? Well, nearly every lawsuit that these inmates file, at least in my experience, they file – they file an IFP motion. So you go to a constable and hand them the papers and a constable serves them on somebody. But who's the constable here? Well, they've got several options. Like I said, typically they seek IFP status. And when that happens, the court will appoint – will order a U.S. marshal to serve the process. That happens most all of the time. And that happens in these renta jails as well as in the State? Yes, yes, absolutely. That, I would say, is 99 percent of the time that happens. Now, when you have inmates that are represented by counsel, a lot of the times there's arrangements or agreements to accept service on the employee's behalf. But even if these pro se inmates that – like in Mr. Gouveia's case where he actually paid the filing fee, nothing prevented him from having those papers served by a process server. Well, nothing prevented him having the papers served by Mr. Blaisdell if they just sought the warden's permission and got his permission to do it, did they? That's correct. The real issue here is not that the prisoner wasn't allowed to serve the papers. The real issue is he served the papers without getting permission from the warden to do it. The rules allow the service if he had gone and got permission. Isn't that correct? That's correct, if he would have gotten the warden's permission. As we pointed out in our briefs, there is a policy against this, and there's good reason for that policy. Well, the policy is they don't want people bartering and they don't want all this kind of stuff. I mean, my worry is that he was – he was, if you will, charged with conspiracy, that is, getting together with the other guy and making a conspiratorial situation, failing to follow the rules, and violation of the rule, of the laws. So that's what I wanted to make sure I was following your argument. It seems to me that the reality is he violated two rules. One, he got together with the other party and conspired to do what he was doing. Two, he didn't go to the warden and get permission to do it. And three, he had property that wasn't his, which, of course, the prison doesn't want him to do because they don't want bartering and they don't want that kind of conduct, right? That's exactly right. And I know Mr. Blysdale refutes this, but he did this all the time, and he was reprimanded for it, and he knew that this was not allowed. So this isn't – this wasn't something new to him, possessing other inmates' property and self-providing legal assistance in this way. One last question. I'm trying to pin down who Frappea is. Is that the warden? No. Frappea is, I believe, a case manager. A case manager for inmates. Within the prison, Elroy, right? She's an SCC employee. And the prison's in Eloy? Eloy, Eloy, Arizona. That's correct. Okay. It's privately owned by CCA, and they have a correctional service agreement with the State of Hawaii, and I believe they've got some State of Washington prisoners incarcerated there, and that they incarcerate these inmates, state inmates. But Frappea is an employee of CCA or employee of the State of Arizona? Of CCA. All right. All of the employees at SCC are CCA employees. One last point, Judge Goodwin. Mr. Govea also could have asked another staff member to serve the papers on Frappea. So he certainly had alternatives. Going to Mr. Blisdale was not okay. I'd like to briefly switch attention to the second issue on the prior lawsuits. As you pointed out, Judge Smith, what if we read this complaint liberally, as counsel suggested? Well, it seems to me a little tough to say that we could rule on this motion at this particular point in time that a person who affides or has to sign each one of these lawsuits and therefore has to give credence or whatever credence the signature was to bear to these plaintiffs is that they wouldn't know about them. Well, let's look at the complaint. On a motion to dismiss? Well, this was a summary judgment motion. Well, even on a summary judgment. Let's look at the complaint. Count 1 is titled, and I'm quoting, "...retaliation against the plaintiff for exercising his right to serve Federal summons and complaint on Frappea." That's in the complaint. The body of that allegation goes in to talk about how he served process. In the last sentence, he mentions that Frappea also knew of the lawsuits that were filed against the CCA previously. It was that sentence that the district court judge liberally construed the complaint to offer him that second theory. There was the liberal construction there and allowed that theory to proceed. And he did, sort of. He held on to his summons theory, and as you pointed out, in his reply to his cross motion for summary judgment, he explicitly disclaimed any reliance on that theory. Now, it's one thing to liberally construe a pleading, and we're not even talking about a pleading technically. We're talking about a motion. It's one thing to liberally construe what an inmate's trying to plead or allege. It's another thing to turn a blind eye to express disclaimers that they're making, and that's something this Court shouldn't do. The district court relied on that statement in its ruling. As you mentioned, what was the district court supposed to do, come up with every conceivable hypothetical allegation and keep it alive? No. He ruled on what was presented, what was expressed by the parties, and that was the outcome. If there are any other further questions, I have nothing further. No further questions. Thank you, counsel. Ms. Sosetto or Ms. Doctoroff? Who will do it? Ms. Doctoroff? Do we have some reserved time? Could you help me understand what the First Amendment has to do with a self-appointed constable going and serving papers without permission? The question before the Court today is whether service of process can implicate the First Amendment. The issue of whether the prison could reasonably restrict that or the alternative ways in which Mr. Blaisdell could have served process or Mr. Gouveia could have had his surface, his lawsuit served, is not what's before the Court. That is a question that would be addressed later under the analysis in Turner. Let me ask you a question. I asked counsel this, and I want to kind of have your idea about it. Are we here on summary judgment or are we here on a motion to dismiss? Both, Your Honor. With regard to Mr. Isn't your claim screened out with the district court when they immediately eliminated the claim on the screening order? Mr. Blaisdell alleged two grounds for retaliation. One was his service of process on Defendant Frappia. The other was his prior litigation. The service of process claim was dismissed at screening because the district court held as a matter of law that service of process cannot be protected by the First Amendment, and we would simply ask the Court to hold that it can. Under the facts of Rizzo, when a prisoner, when a plaintiff assists another person with the vindication of his rights through the courts, those acts have been found to be protected by the First Amendment. Mr. Blaisdell was not allowed to develop a record on this at all. We're not asking the Court to hold that every time a person serves process, it's necessarily protected by the First Amendment. We're not asking the Court to hold that every time a prisoner serves process, it can't be reasonably restricted by the prison. What we're asking the Court to recognize is that under Rizzo and under Button and under Owens, which the Ninth Circuit relied on in Rizzo, the acts that Mr. Blaisdell was engaged in are similar to the acts in those cases, and the courts have found that those acts are protected by the First Amendment. And by dismissing Mr. Blaisdell's claim, the district court erred on the law itself, and he was not allowed to proceed with his claim and develop this along with the other elements of his retaliation claim. He still would have had to prove that there was an absence of a penological purpose, but he wasn't allowed to do that. He was never allowed to get there. He was never allowed to argue the fact that Mr. Gouveia was not proceeding in IFP status. He was not allowed to explain why his acts would be protected by the First Amendment. His claim was dismissed at screening, and we're only asking the Court to remand so that he can proceed with his claim. Thank you, counsel. The case just argued will be submitted for decision. Thank you. And the Court will adjourn. Before actually adjourning, on behalf of the Court, I would like to express our appreciation to the student, Ms. Doktoroff, who made the presentation here today, and to her mentor from Melvaney and Myers. We appreciate that service to the Court very much. Thank you. Thank you.
judges: Goodwin, O'scannlain, Smith